UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

MELLISSA CAMPANARO,

        Plaintiff,        Civil Action No.: 14-12876
                                  Honorable Laurie J. Michelson
        v.                Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [R. 14, 17]**

Plaintiff Melissa Campanaro appeals a final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions, which were referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The Court finds that the administrative law judge ("ALJ") erred in assessing Campanaro's credibility and by not properly evaluating the medical evidence within the claimed closed period. For these reasons, the Court **RECOMMENDS** that:

- the Commissioner's motion **[R. 17]** be **DENIED**;

- Campanaro's motion **[R. 14]** be be **GRANTED IN PART AND DENIED IN PART**; and,

- the Commissioner's decision be **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendation.

I.    BACKGROUND

A.    Plaintiff's Background and Claimed Disabilities

Campanaro was a forty-year-old high school graduate on her amended onset date, and had been educated and employed previously as a licensed practical nurse and later as a cashier. She alleged disability from October 16, 2011, until April 16, 2013 due to back pain associated with a disc herniation, which improved after surgery in October 2012.

B.    Procedural History

On April 5, 2012, Campanaro filed applications for SSI and DIB, alleging disability as of August 15, 2011, on the basis of two herniated discs and numbness in her right leg. [R. 11-5, Tr. 150-62; R. 11-6, Tr. 203]. The claims were denied on April 26, 2012, and Campanaro did not appeal. [R. 11-4, Tr. 88-95]. On September 27, 2012, Campanaro filed a second set of DIB and SSI applications, alleging disability as of September 11,

2009, due to a "damaged back." [R. 11-5, Tr. 163-75]. The claims were denied initially, and Campanaro filed a timely request for an administrative hearing, held on November 6, 2013. [R. 11-2, Tr. 27-47; R. 11-4, Tr. 96-103, 107-108]. Prior to the hearing, she amended her claim to allege a closed period of disability between October 16, 2011 and April 16, 2013, and waived her appearance at the hearing. [R. 11-4, Tr. 121-22, 143]. At the hearing, the ALJ elicited oral representations from her counsel and testimony from a vocational expert ("VE"). [R. 11-2, Tr. 27-47].

Notwithstanding Campanaro's request for a finding of disability during the closed period only, the ALJ considered the entire period from the original onset date of September 11, 2009, through the date of the November 29, 2013 written decision, and concluded that she was not disabled during that time period. [*Id.*, Tr. 14]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [*Id.*, Tr. 1-6]. Campanaro timely filed for judicial review. [R. 1].

    **C.    The ALJ's Application of the Disability Framework**

DIB and SSI are available for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

3

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant who has been disabled but has recovered may file a claim for benefits for a closed period. *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). "In a 'closed period' case, the decision maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision." *Pickett v. Bowen*, 833 F.2d 288, 289 (11th Cir. 1987).

The Commissioner determines whether an applicant was disabled by analyzing five sequential steps. First, if the applicant had been "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).[1] Second, if the claimant had not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments met or equaled the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found to have been disabled. *Id.* If the fourth step is

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.
[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 1520(c); 920(c).

reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find that the claimant was not disabled if he or she could still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could have adjusted to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following the five-step sequential analysis, the ALJ concluded Campanaro was not disabled either during her alleged closed period or since her original alleged onset date of September 11, 2009. At step one, he found that she had not engaged in substantial gainful activity since her alleged onset date. [R. 11-2, Tr. 15-16]. The ALJ found that income Campanaro derived between April and August 2013 from employment as a cashier did not constitute substantial gainful activity but was instead a unsuccessful work attempt. [Id.]. At step two, he identified severe impairments of lumbar degenerative disc disease status-post laminectomy and obesity. [*Id.*, Tr. 16]. At step three, the ALJ concluded that neither of Campanaro's severe impairments, either alone or in combination, met or

5

medically equaled a listed impairment, comparing her impairments with Listing 1.04 (Disorders of the spine). [Id.].

Next, the ALJ assessed Campanaro's residual functional capacity, finding her capable of performing a limited range of light work that included only two hours of standing and/or walking, six hours of sitting, and only occasional climbing, balancing, stooping, bending, kneeling, crouching and crawling. [Id.]. At step four, the ALJ determined that, based on this RFC, Campanaro was unable to return to any of her past relevant work. However, at step five, the ALJ concluded, with the assistance of VE testimony, that a hypothetical claimant matching Campanaro's profile could engage in a substantial number of other jobs in the national economy, including sedentary occupations of production worker/assembler, (2,400 jobs in the region), inspector/tester (700 jobs), and machine operator/tender (1,300 jobs). [Id., Tr. 19-20]. Thus, the ALJ found her to be not disabled. [Id.].

## II.    STANDARD OF REVIEW

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is

"more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

The significant deference accorded the Commissioner's decision is conditioned on the ALJ's adherence to governing standards. "Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings." *Gentry*, 741 F.3d at 723. *See also Rogers*, 486 F.3d at 249. In other words, substantial evidence cannot be based upon fragments of the evidence, and "must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383,

388 (6th Cir. 1984) (internal quotation marks and citation omitted).

With these standards in mind, this Court finds that the ALJ's determination that Campanaro was not disabled during the closed period is not supported by substantial evidence.

### III. ANALYSIS

Campanaro argues that the ALJ omitted and misrepresented relevant evidence of record that undermines his credibility determination, and that he failed to give proper weight to the opinion of Campanaro's treating surgeon. The Court agrees, and recommends remand.

#### A. The ALJ's Credibility Determination

ALJs must employ a two-step process to determine pain. The ALJ must first determine whether the there is an "underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms." *Rogers*, 486 F.3d at 2471 (citing 20 C.F.R. § 416.929(a)). Second, if such impairment exists, the ALJ "must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Id.* In this case, the ALJ found that Companaro's underlying physical ailments explained some, but not all of her complaints, and that her subjective claims concerning the intensity, persistence and limiting effects of her disc disease were not fully

credible.  [R. 11-2, Tr. 16-18].

Credibility determinations of witnesses are within the province of the ALJ, and they should not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  At the same time, "such determinations must find support in the record. . . .  [T]he ALJ must make a determination of the credibility of the claimant in connection with his or her complaints based on a consideration of the entire case record." *Rogers,* 486 F.3d at 241 (quotation marks omitted).

### 1. Medically Determinable Physical Impairment

When finding that Campanaro's medically determinable physical impairment could reasonably be expected to cause her disabling pain, the ALJ grossly misstated and under-represented the medical evidence.

The ALJ stated that Campanaro "alleges disability that is essentially based on a failed lumbar spine surgery" and described the objective evidence from late 2011 as including x-rays and an MRI that showed "mild degenerative changes" and "no clear evidence of nerve root compromise." [R. 11-2, Tr. 17].  That is not accurate.  The October 2011 MRI found a broad-based central disc herniation at L5-S1, with extruded disc material extending from the interspace, resulting in narrowing of the lateral recesses of S1 bilaterally and the exiting foramen on the right at L5-S1, and

9

producing mild to moderate spondylosis. [R. 11-7, Tr. 315-17]. Further, compromise of the existing right L5 nerve root and the bilateral emerging S1 nerve root could "not be excluded." [Id., Tr. 317].

In December 2011, Casey R. Bartman, M.D., described the MRI as revealing "a fairly large herniation at L-5/S-1 level to the right side. There is significant canal encroachment." [Id]. . [R. 11-7, Tr. 305-06]. In addition, Campanaro told Dr. Bartman that she was having severe low back pain and right radicular pain that was not being controlled with Valium, Tramadol and an occasional Vicodin. [Id., Tr. 305]. Dr. Bartman discussed surgery with Campanaro and, despite the risks and the limited relief she could expect, she elected to go forward with the procedure. [Id., Tr. 306].

Campanaro was scheduled to have a lumbar laminectomy and discectomy at the L-5/S-1 level on February 27, 2012. [R. 11-7, Tr. 496]. However, as documented during an emergency room visit on July 27, 2012, she lost her insurance just before the procedure and got it back in about July 2012. [Id., Tr. 428]. The ALJ did not include the planned surgery or the loss of insurance in his decision, and instead misleadingly described her lack of treatment for a period after February 2012 as undermining her credibility. [R. 11-2, Tr. 17].

Campanaro returned to Dr. Bartman, and he performed the surgery

on October 1, 2012. [R. 11-7, Tr. 455-56]. The postoperative diagnosis was "herniated calcified disk at L5-S1 level" and a "very swollen, inflamed nerve root." [Id., Tr. 458]. She returned for three post-operative visits in October and November 2012, and her pain showed improvement. [Id. at 498-500]. The only other record after that is a MRI dated February 16, 2013, ordered by Dr. Bartman, at which time Campanaro's complaint of pain was limited to her right leg. [Id., Tr. 506-08]. Therefore, there is no evidence in the record that Campanaro was disabled after the post-operative visit in November 2012.

    Nonetheless, the records from October 2011 to November 2012 do not support a finding that Campanaro suffered from only mild degenerative changes. So often, ALJs and reviewing courts find that a claimant's receipt of no more than conservative treatment is inconsistent with disabling pain. *See, e.g,* *Stevens v. Astrue*, 839 F. Supp. 2d 939, 951 (S.D. Ohio 2012). Surely, the converse is true too. That is, Dr. Bartman's recommendation for surgery after reviewing Campanaro's MRI, and her election to undergo the procedure despite the risks, are evidence that her underlying medically determinable impairment was consistent with her complaints of disabling pain. Moreover, the ALJ was required to give controlling weight to Dr. Bartman's opinion regarding the severity of Campanaro's back impairment.

11

*Rogers,* 486 F.3d at 242 (treating physician's opinion regarding nature and severity of claimant's impairment ordinarily given controlling weight). Yet, the ALJ failed to mention Dr. Bartman's diagnosis from December 2012 or recommendation for surgery at all. That is clear error.

 The ALJ also erred by minimizing and interpreting Campanaro's treatment records from emergency rooms. Campanaro was treated in various emergency rooms seventeen times for back pain between October 2011 and her October 2012 surgery, usually after falling or injuring herself while attempting exertion. [*See* R. 11-7, Tr. 323-33, 338-39, 343-49, 351-86, 397-400, 404-421, 425-36, 441-46, 474-79, 480-81]. The ER records consistently describe her as suffering from chronic back pain due to a herniated disc that worsened with movement. [*Id.*] At those visits, she was prescribed or given pain medications including Vicoden, Norco, Valium, Flexaril, Toradol, Nubain, Anaprox, Diazepam, Tramadol, Ultram, or prescription strength naproxen or Motrin. [*Id.*, Tr. 323-25, 328, 339, 344, 348, 357, 365-66, 370, 373-75, 379, 381-84, 400, 407, 411-12, 420, 428, 431, 433, 478 ].

 The ALJ described only three of those ER records, and noting that an x-ray in March 2002 did not evidence a fracture or acute back injury, that the physical examinations were "normal," and that Campanaro was

described as ambulating without difficulty and having mild spasms and tenderness. [R. 11-2, Tr. 17-18]. The ALJ concluded that this objective evidence did not support the allegations of disability. The problems with this analysis are many.

First, the ALJ "played doctor" by evaluating the objective medical evidence from the ER visits without the benefit of a medical opinion. *Allen v. Comm'r of Soc. Sec.,* No. 12–15097, 2013 U.S. Dist. LEXIS 150236, *44–45, 2013 WL 5676254 (E.D.Mich. Sept. 13, 2013) *adopted by* 2013 U.S. Dist. LEXIS 149851, 2013 WL 5676251 (E.D.Mich. Oct. 18, 2013). "[C]ourts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data." *Id.* (collecting cases).

Secondly, the ALJ failed to mention or consider that a surgeon had evaluated Campanaro and her MRI prior to those ER visits, and had found that her medical impairment warranted surgery. The ALJ did not mention that the only reason that she did not have the surgery was because of a lack of health insurance.

Moreover, although the ALJ found it relevant during the hearing that the ER records showed Campanaro to have "had some tendency to fall," [R. 11-2, Tr. 41], he did not address or consider that tendency in his

13

decision when determining whether she had an underlying medical impairment that was consistent with her reports of pain. *Green v. Colvin*, No. 13-CV-01686-LTB, 2014 WL 7204836, at *10 (D. Colo. Dec. 17, 2014) (claimant's tendency to fall supported finding of disability).

Finally, the ALJ neglected the sheer number of the ER visits, thus minimizing the severity and consistency of Campanaro's back pain and emergency treatment.[3] "Substantial evidence cannot be based on fragments of the record." *Laskowski v. Apfel*, 100 F. Supp. 2d 474, 482 (E.D. Mich. 2000).

### 2. Intensity, Persistence and Limiting Effects of Symptoms

To evaluate the intensity, persistence, and limiting effects of the symptoms on Campanaro's ability to do basic work activities, the ALJ first described her October 2012 function report as evidencing that she was active, which was misleading. [R. 11-2, Tr. 17]. Campanaro's daily activities included the sedentary activities of laying on the couch, watching television, reading books and knitting. [R. 11-6, Tr. 273, 276]. She needed

---

[3] Nor did the ALJ consider whether Campanaro's frequent ER visits would cause excessive absenteeism during the close period, and the potential for frequent absenteeism was not address to the VE. [R. 11-2, Tr. 42-45]. *Chiappa v. Sec'y of Dep't of Health, Ed. & Welfare*, 497 F. Supp. 356, 360-61 (S.D.N.Y. 1980) (absenteeism is relevant to disability claim).

14

help with putting on underwear or pants, bathing and shaving her legs. [Id.] While the ALJ described Campanaro as preparing simple meals and cleaning, what she said specifically is that she made sandwiches or frozen meals and spent about ten minutes a day washing dishes. [R. 11-2, Tr. 17; R. 11-6, Tr. 274]. The ALJ said that Campanaro socialized with others, but the questionnaire requested social activity that could be engaged in on the phone, on the computer or in person, and Campanaro did not indicate that her daily "chats" were generally in person. [Id., Tr. 276].

To conclude that Campanaro is more functional than she alleged, the ALJ also relied upon ER reports that showed Campanaro as having exacerbated her back pain while helping her sister clean her yard and climbing on a chair to clean a ceiling fan, and he noted that she drove herself to the ER and ambulated effectively. [R. 11-2, Tr. 17]. As described above, reference to those select ER records fails to capture or show consideration for Campanaro's overall tendency to fall and be injured by attempts at exertion, as revealed by all of the ER records.

For these reasons, the Court finds clear error with the ALJ's opinion that Campanaro's subjective claims concerning the intensity, persistence and limiting effects of her disc disease were not fully credible. Moreover, the ALJ's error in disregarding and mischaracterizing a substantial body of

the medical evidence is not harmless. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 729 (6th Cir. 2014)

### B.   The ALJ's Failure to Consider Closed Period Only

When finding that Campanaro had a RFC to perform a limited range of light work, the ALJ inexplicably considered the evidence through the date of his decision. [R. 11-2, Tr. 13]. That does not make sense, because Campanaro requested benefits for a closed period that ended in April 2013, and she had returned to work that month. [*Id.*, Tr. 19; R. 11-6, Tr. 287]. The ALJ's duty was to determine whether Campanaro "was disabled for a finite period of time which started and stopped *prior to* the date of his decision." *Pickett,* 833 F.2d at 289 (emphasis added). Here, the ALJ failed to carry-out that duty, even though the evidence in the record as summarized by the ALJ supported a finding that Campanaro had far more significant symptomology for a finite period from October 2011 until just after her October 2012 surgery.

The ALJ noted that the record contained no substantive treatment for back pain until late 2011. [R. 11-2, Tr. 17]. He later pointed out that the "overall notes since the October 2012 lumbar laminectomy indicated significant improvement" and that Campanaro "admitted in July 2013 that she did not return to any of her doctors, seek any other treatment, or even

16

present to the ER with any medical complaint" after February 2013. [*Id.*, Tr. 18]. In between late 2011 and February 2013, during that finite period, Campanaro's MRI revealed what Dr. Bartman's report described as "a fairly large herniation at L-5/S-1 level to the right side" with "significant canal encroachment," Campanaro sought emergency medical attention for her back seventeen times, and she had surgery in October 2012. [*See* R. 11-7, Tr. 305-06, 323-33, 338-39, 343-49, 351-86, 397-400, 404-421, 425-36, 441-46, 455-56, 474-79, 480-81]. Campanaro would need a period of recovery after the surgery. *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003). So, Campanaro potentially had a continuing period of twelve months in which she was unable to perform work, which would entitle her to benefits within the closed period. *Id.*

Yet, the ALJ glossed over much of the evidence during that finite period, and his narrative discussion treated the entire period from September 2009 to November 2013 as one long period of claimed disability. [R. 11-2, Tr. 17-19]. His failure to determine whether Campanaro's RFC was more limited during that finite period than it was at the time of his decision deems that RFC unreliable, necessitating remand.

## IV. CONCLUSION

This matter should be remanded, and the ALJ should be ordered to

17

consider all of the medical evidence during the claimed closed period between October 16, 2011 and April 16, 2013, to determine whether Campanaro had a RFC that deemed her incapable of work during that period or for any continuous twelve months within that period.  Further, the ALJ should be ordered to give controlling weight to Dr. Bartmann's opinion that Campanaro's herniated disc was serious enough to warrant surgery, or to give good reason for giving that opinion less weight.  Finally, the ALJ should be ordered to rely upon medical opinions rather than his own expertise when interpreting medical data to support his RFC finding.

    Therefore, the Court **RECOMMENDS** that that Campanaro's Motion for Summary Judgment **[R. 14]** be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks reversal and direct award of benefits, the Commissioner's Motion **[R. 17]** be **DENIED** and this case be **REMANDED** for further consideration consistent with this Report and Recommendation.

    s/Elizabeth A. Stafford  
ELIZABETH A. STAFFORD  
United States Magistrate Judge

Dated: June 30, 2015

## **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in**

**length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 30, 2015.

                                          s/Marlena Williams
                                          MARLENA WILLIAMS
                                          Case Manager